ALBERT HAAKE, RESPONDENT, v. BOROUGH OF NOR-
WOOD, IN THE COUNTY OF BERGEN, APPELLANT.

Argued November 28, 1923—Decided May 19, 1924.

The reading of an improvement ordinance at a meeting of a borough
    council, without objection from the members thereof, is a con-
    sidering of the same, and, therefore, the action of the council in
    giving "notice of intention" to undertake the improvement, after
    such reading, is in violation of the procedure prescribed in sec-
    tion 9 of article 20 of the act concerning municipalities. *Pamph.
    L.* 1918, *p.* 484.

On appeal from the Supreme Court, whose opinion is re-
ported in 1 *N. J. Mis. R.* 341.

For the appellant, *LeRoy Vander Burgh.*

For the respondent, *Frederick W. Mallocks.*

The opinion of the court was delivered by

CLARK, J.   Mr. Justice Parker, sitting alone in the Su-
preme Court, pursuant to section 5 of the *Certiorari* act

(*Pamph. L.* 1903, *p.* 344), set aside an ordinance of the borough of Norwood. This ordinance provided for the grading, macadamizing and draining of certain streets in that borough, and assessed seventy per cent. of the cost of these improvements against the lands benefited thereby. Authority for the passage of such an ordinance and the procedure of the borough council in regard thereto are found in articles 20 and 10, and more particularly in sections 9 and 1, respectively, of such articles, of the so-called Home Rule act, as amended (*Pamph. L.* 1918, *pp.* 478, 484), and in section 26 of the Borough act, as amended. *Pamph. L.* 1921, *p.* 804.

The learned justice concluded that the procedure of passage prescribed in the above provisions of the law had not been properly adhered to by the borough council. The particular error, which seems to him to invalidate the ordinance, lay in the time at which the "notice of intention" required by the statute was given by the council to the affected landowners. The time selected for the giving of this statutory notice was, according to the minutes of the council, after its clerk had read the proposed ordinance in full, and after a resolution, stating that the ordinance had passed its first reading, had received the unanimous vote of the members of the council present.

The section of the statute pertinent to the giving of notice reads, in terms, as follows:

"After the introduction of any ordinance authorizing any local improvement, public notice shall be given to all persons whose lands may be affected thereby or who may be interested therein, of the intention of the governing body *to consider* the undertaking of such improvement. Such notice shall state the time when, and the place where, such governing body shall consider the said ordinance, and shall briefly describe the proposed improvement." *Pamph. L.* 1918, *p.* 484.

In the construction given to this language by Mr. Justice Parker, the proceedings of the council prior to the publication of the "notice of intention" amounted to a consideration of the ordinance, and therefore to a violation of the procedure laid down in the statute. In this view we concur.

It was early decided in this state that, even in the absence of a statute, due process of law entitled a landowner, especially affected by a proposed public improvement, to have notice thereof and an opportunity to be heard before the municipal body which intended to undertake the same. *Camden* v. *Mulford*, 26 *N. J. L.* 49. This is so because such proceedings are judicial in character. *Groel* v. *Newark*, 78 *Id.* 142; *Sears* v. *Atlantic City*, 72 *Id.* 435. Prosecutor in the case at bar had a hearing before the final passage of the ordinance to which he now objects. Since he has raised no constitutional questions, he is, apparently, satisfied that the requirements of due process were thereby met. The question to be decided in this appeal is therefore purely one of statutory construction.

We are concerned with the proceedings of a deliberative body. Such bodies are governed, either by express rules, or, lacking them, by parliamentary practice. *Gouldey* v. *Atlantic City*, 63 *N. J. L.* 537. In the printed case we find no rules purporting to be those controlling the proceedings of the council of the borough of Norwood. We shall assume, then, that it followed the ordinary usage of legislative bodies in this country.

The different stages or steps through which a bill or ordinance, as the case may be, must pass, were the invention of an early period of parliamentary history. Because of limitations in the accomplishments of reading and writing and in the art of printing, it was necessary that every bill receive several readings in order that its contents might be fully known and understood. *Cush. L. & P. Leg. Assem.* 2125. The practice is continued at the present day as a safeguard against improvident legislation and in order to afford an opportunity for the careful examination of proposed laws. *Suth. Stat. Con.* (*2d ed.*), § 54. It is required for legislative bodies by the constitution of many of the states, among them New Jersey (*Cooley Const. Lim.* (*6th ed.*) 166), and is recognized in the statute with which we are now dealing. *Pamph. L.* 1918, *p.* 478. Although our courts have held that such a provision is satisfied by a reading of the title of

a particular measure (*Anderson* v. *Camden,* 58 *N. J. L.* 515), the fact that it must correctly express the object thereof, demonstrates that the original purpose of the reading is still regarded. *Bill Posting Co.* v. *Atlantic City,* 71 *Id.* 72.

Without the rules of the borough council of Norwood, and in the face of the somewhat obscure language of the minutes of the meeting of that body held on November 14th, 1922, at which mention is first made of the improvement ordinance, it is difficult to determine the exact nature of the parliamentary steps taken with reference thereto at that meeting. Seemingly, the ordinance was first read by the clerk without a motion to that effect being made. Then the borough council resolved by a unanimous vote of the members present two things—that the ordinance pass its first reading and that the borough clerk be directed to publish the "notice of intention" required by law.

According to strict parliamentary practice, no step may be taken in the progress of a bill or ordinance from one stage to another except as the result of some affirmative action on the part of the body in which it is. *Cush., supra,* 2134. Since its contents are then unknown, it is not usual for the motion to read a bill the first time to be opposed. This has led to a reversal of the ordinary procedure in the interests of despatch, and both in England, and, generally, in this country, the practice now admits of the first reading of a bill or ordinance as a matter of course, and without motion unless there is opposition. 2 *Jour. House Rep.* 187. If, however, any member objects to the principle of the bill or ordinance, he has a right to oppose the same and to make the appropriate motion. *Par. Reg.* 22, 189; *Cush., supra,* 2142.

It will be observed that the ordinance had already been read at the time when the motion that it pass its first reading was made and adopted. We may or may not be able to interpret this as a motion that it be read a second time, the next step in the orderly progress of an ordinance. At any rate, it seems quite clear to us that it is indubitable proof of that fact that no opposition to the first reading was made by the borough council or any member thereof.

Since we have seen that a right to object to such reading, and to demand a vote thereon, exists, their failure to so object *ex necessitate,* in our opinion, implies a consideration of the ordinance. On any other view, it seems to us that the members of the council would be derelict in their duties. This, because, if they have a right to reject an ordinance at any stage of its passage, they must be under obligation to their constituents to apply their minds to the problem of whether the interests of such constituents would be best served by a rejection. On any other view, also, we would arbitrarily be eliminating one of the stages into which the passage of legislative acts are separated. It follows, then, that the action of the borough council of Norwood, in permitting the improvement ordinance to be read without objection, amounts to a consideration of the same, and their "notice of intention" accordingly comes too late to satisfy the statute.

A further argument to sustain our construction of the statute may be found, we think, in the nature of the particular proceeding. The members of a deliberative body may, either individually or collectively, reverse their previous action at any one of the various stages through which the measure before them is passing. A certain reluctance to admit error is a common characteristic of all of us, either in our private or official capacities. The property owners affected would, in some degree, be prejudiced if they were not permitted to make their objections before the councilmen had in any way committed themselves. Our interpretation of the legislative intention gives them such an opportunity.

Furthermore, since, as we have seen, the record does not include a copy of the rules of the borough council of Norwood, it may well be that such rules contemplate only two readings instead of the usual three, and that amendment and debate are permitted at the first reading. This seems to have been the practice in the township of Woodbridge, whose procedure in regard to an improvement ordinance was found to be defective by Mr. Justice Bergen, speaking for the Supreme Court, under circumstances similar to those of the case at bar. *Boynton* v. *Woodbridge,* 109 *Atl. Rep.* 514. Of

course, on the view we take that failure to object implies consideration, opportunity for debate or amendment, *a fortiori* has the same effect. In any case, even were that not so, we cannot agree to appellant's contention that a failure to amend a bill or ordinance implies that no thought has been given to the same. It seems to us that an equally reasonable implication is that the particular bill or ordinance has been found to be satisfactory so far as the intelligence of the members considering it is able to discover.

We confess, also, that we are not impressed by the argument of the counsel for the borough, based upon the simplification of the former procedure by the amendments of 1918. It seems to be his idea that because, in the passage of an improvement ordinance, fewer meetings of the council are required by the law, therefore the stages through which such ordinance goes are correspondingly decreased. The fallacy of this conception seems to us to lie in the fact that the parliamentary stages of a bill or ordinance are dependent rather upon rules or parliamentary usage, which relate in no particular to the number of meetings. *Cush., supra,* 2123.

Our agreement with the decision of the Supreme Court on the question of notice makes it unnecessary for us to deal with the other grounds of attack upon the ordinance. In regard to the alleged laches or estoppel of the prosecutor, we find ourselves also in accord with the learned justice who sat below. We have found no case in this state in which a prosecutor, objecting to a local improvement, has been barred before the contract for the improvement has been awarded. *Scheible* v. *Hightstown,* 93 *N. J. L.* 69. This makes it unnecessary to consider whether or not the defect in giving notice is a jurisdictional fact, and so one which would make the ordinance void, irrespective of estoppel or laches. *App* v. *Stockton,* 61 *Id.* 520.

Let the judgment under review be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, CAMPBELL, GARDNER, CLARK, JJ.   6.

*For reversal*—THE CHANCELLOR, KALISCH, BLACK, KATZENBACH, VAN BUSKIRK, JJ.   5.